SAMUEL FRIEDMAN, Plaintiff, *v.* DANIEL GIBBONS, JOSEPH G. GESSFORD and REGINE STERN, Defendants.

(Supreme Court, New York Special Term, October, 1917.)

Bankruptcy — adjudication in — trustee in — judgments — foreclosure — motions and orders — garnishee order — injunctions — sheriffs — poundage — Code Civ. Pro. §§ 1391, 3307(23) — Debtor and Creditor Law, § 150.

On May 16, 1917, after a deficiency judgment in an action to foreclose a mortgage had been docketed against the defendant, a school teacher employed by the city of New York, a garnishee order issued against her salary under section 1391 of the Code of Civil Procedure was filed with the corporation counsel, and on June 1, 1917, she was adjudged a voluntary bankrupt and the claim against her under the deficiency judgment was duly scheduled. On July 7, 1917, the bankruptcy court granted an order restraining interference with her salary under the garnishee order. *Held*, that a motion made by her after her discharge in bankruptcy had been granted, August 22, 1917, to vacate the garnishee order should be granted and the city comptroller directed to pay her so much thereof as was withheld since the date of her adjudication as a bankrupt, the amount of salary withheld under the garnishee order from its

date to the adjudication in bankruptcy to remain in the hands of said comptroller until the trustee in bankruptcy take such steps as he may be advised, with notice to the sheriff that his right of poundage under section 3307(23) of the Code of Civil Procedure, if claimed, may be protected.

All proceedings in bankruptcy relate to the time of the bankruptcy adjudication, and a contention that under section 1391 of the Code of Civil Procedure plaintiff was entitled to ten per cent of the bankrupt's salary down to the time that the judgment for deficiency should be canceled pursuant to section 150 of the Debtor and Creditor Law, which provides in substance that at any time after one year has elapsed since the bankrupt was discharged from his debts he may apply to the court in which the judgment for deficiency was rendered against him for an order directing said judgment to be canceled and discharged of record, is untenable, the provisions of the Bankruptcy Act being paramount to the state statutes.

MOTION for the vacation of a garnishee order.

Goldstein & Goldstein (Jonah J. Goldstein, of counsel), for plaintiff.

John F. Forrester, for defendants.

GOFF, J. On January 10, 1917, a deficiency judgment in foreclosure proceedings was obtained by the plaintiff against the defendant Regine Stern (along with the other defendants), a school teacher employed by the city of New York. On May 16, 1917, a garnishee order was issued against her salary under section 1391 of the Code of Civil Procedure, which order was filed with the corporation counsel on May 19, 1917. On June 1, 1917, the defendant filed with the United States District Court for the Eastern District of New York a voluntary petition in bankruptcy, and the said claim of the plaintiff was duly scheduled in said petition. On July 7, 1917, an order was issued

by the United States District Court restraining interference with the salary of the defendant under the garnishee order. On August 22, 1917, defendant was duly discharged as a bankrupt. She now moves for the vacation of said garnishee order. The plaintiff opposes the motion to the extent of claiming " that it should not be vacated *in toto,* but only when the order upon this motion has been actually entered and to operate and become effective from that time only," and relies on *Ulner* v. *Doran,* 167 App. Div. 259. It is true that in that case the Appellate Division passed directly upon the question whether, " although the debt may have been discharged (by bankruptcy), the execution continues in force, and the levy thereunder remains a continuing lien upon salary to be earned after the discharge of the judgment." Though holding that " as to earnings which become due after the discharge in bankruptcy there remains no indebtedness to be satisfied and consequently the order permitting the issue of what is sometimes termed a garnishee execution should be modified," nevertheless, the court said (p. 262) : " We think, however, that the execution remained valid and enforcible until modified as contemplated by section 1391 (*supra*), and that any moneys collected under it, even after the date of the defendant's discharge in bankruptcy, are properly payable to the judgment creditor. It was the evident intention of section 1391 that such an execution should remain in full force until satisfied by the moneys collected thereunder or modified by the court." In other words, though the debt had ceased to exist, the remedy for its enforcement remained. The Bankruptcy Act never intended that a debtor should be thus harassed by a creditor and the discharge in bankruptcy in effect postponed, and the purpose of the Bankruptcy Act nullified. Nor could such

have been the intent of the legislature of the state of New York. Section 1391, *supra,* provides that the levy under the garnishee order should be " a continuing levy until said execution and the expenses thereof are fully satisfied and paid *or until modified as hereinafter provided,"* and as shown by a later provision of the section the modification intended was such " as shall be deemed just." Certainly the legislature were not contemplating the intervention of bankruptcy, and, bankruptcy having intervened, the section cannot arbitrarily be construed literally. Fortunately the National Bankruptcy Act and the federal decisions thereunder furnish relief from such an illogical and unjust position. Section 67-f of the Bankruptcy Act provides: " That all levies, judgments, attachments, *or other liens,* obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt." In *Matter of Ludeke,* 22 Am. Bank. Rep. 467, the garnishee order was dated January 27, 1909, the petition in bankruptcy was filed February 10, 1909, and the discharge was on April 30, 1909. Upon a motion to dissolve the lien of the garnishee order Chatfield, D. J., said (pp. 468, 469) : " The bankrupt was relieved by his discharge in bankruptcy from all provable debts. The judgment in question was apparently such a debt, and the lien against his salary, it is believed, would not continue with respect to any sum not already earned, and to which lien had not specifically attached under the levy of the execution, at the date of his adjudication in

Supreme Court, October, 1917. [Vol. 101.

bankruptcy, inasmuch as the discharge was granted. Under Act July 1, 1898 (c. 541, sec. 67-f, 30 Stat., 565, U. S. Comp. St., 1901, p. 3450), any amount of money so levied upon within four months prior to the filing of the petition passed to the trustee as a part of the estate of the bankrupt, unless it had been paid over and had passed to the hands of an innocent party. * * * The discharge in bankruptcy must be held to have freed the bankrupt's salary from the effect of said execution in so far as payments subsequent to the date of the adjudication are concerned, inasmuch as the judgment under which the execution was levied has been discharged, and inasmuch as the levy cannot be considered to have actually attached until the salary accrued." In *Matter of Sims*, 23 Am. Bank. Rep. 899, the levy was more than four months old when the bankruptcy petition was filed. But on the question as to the garnisher's proceeding against salary earned after the filing of the petition, Hand, D. J., said (pp. 900, 901): " Should I allow the creditors to levy on wages in fact earned in the future, they would recover upon a past debt from property earned subsequently. This contradicts the whole purpose of a discharge and I cannot permit it without violating the Act. It is not enough that in form the levy may be upon a single chose in action, consisting of the contract of employment. I concede that this is so, but the obligation is quite valueless till the bankrupt performs the condition of service to his employer. Therefore, for the purpose of this Act, I shall decide that the wages, which arise from services rendered after petition filed, is covered by the discharge and that the stay should continue as to that." In *Matter of Harrington*, 29 Am. Bank. Rep. 666, it appears that the levy was after the bankrupt's adjudication. Ray, D. J., said (p. 667): " but such execution and levy, if

made within four months of the filing of a petition,
would of course fall,'' citing section 67-f, Bankruptcy
Act, *supra*. The creditor contended that under sec-
tion 1391, *supra,* he was entitled to ten per cent of the
bankrupt's salary down to the time that the creditor's
judgment should be canceled, pursuant to the provi-
sion of section 150 of the Debtor and Creditor Law,
this section providing in substance and effect that at
any time after one year has elapsed since the bank-
rupt was discharged from his debts he may apply to
the court in which judgment was rendered against him
for an order directing the judgment to be canceled
and discharged of record. Ray, D. J., said (pp. 668–
670): '' I do not think this contention can be sus-
tained. The provisions of the Bankruptcy Act are
paramount to State statutes. * * * All proceedings
relate to the time of the adjudication. * * * If the
discharge is granted, it relates back to the adjudica-
tion and releases the bankrupt from all liability on
such debts as were provable in bankruptcy and existed
at that time, due or not due, except such as are not
affected by a discharge. * * * As the discharge in
bankruptcy of Harrington relates back to the adjudi-
cation, August 13, 1912, and releases him from all lia-
bility on the judgment in question obtained August 7,
1912, and the debt represented thereby, it is imma-
terial that under the provisions of the statute of the
State of New York he cannot secure a cancellation of
record of such judgment until the expiration of one
year after the granting of such discharge. The cred-
itor cannot enforce it during that year against after-
acquired property or wages earned after adjudica-
tion. * * * It is of course true that the judgment
does not become an absolute nullity for all purposes
until discharged of record. The Congress of the
United States did not undertake to provide for the

cancellation of judgments entered in the State courts on the granting of a discharge; but it has said, in substance, that the debt represented by this judgment is provable and dischargeable in bankruptcy, and that the debt and judgment cannot be enforced against the bankrupt or his property taken except in so far as it had been made a lien thereon more than four months prior to the adjudication." In *Matter of Obergfoll,* 38 Am. Bank. Rep. 645, the garnishee order was entered on February 18, 1915, the adjudication was on March 24, 1915, and the discharge on June 27, 1916. On April 15, 1915, the federal court directed the paymaster to withhold the salary deducted under the garnishee execution and to retain the same for twelve months from the date of adjudication or until the question of the bankrupt's discharge should be determined. Upon the bankrupt's discharge the federal court ordered the paymaster to pay over to the trustee in bankruptcy all money collected by him under the garnishee execution and in his hands, and that the trustee pay over therefrom to the bankrupt all deductions made since the date of the adjudication in bankruptcy. It was objected that the United States District Court had no power or right to interfere with the process issued out of the New York Supreme Court. Rogers, C. J., writing for the United States Circuit Court of Appeals, said (pp. 646–648) : " In support of his contention he calls attention to the decisions of the Supreme Court of the United States declaring that when a court has taken into its custody property of any kind another court should not be permitted either to oust the possession of the first court, or in any way to interfere with its complete control and disposition of the property for the purpose of the cause in which its action has been invoked. That this principle has been laid down in a long line of cases cannot be

denied. * * * The principle which these cases
enunciate is fully recognized by this court and will be
unhesitatingly applied in all proper cases. The diffi-
culty is that the principle invoked has no application to
such a case as that now before us. The order which the
petitioner seeks to have reviewed was made under au-
thority of section 67, subdivision f, of the Bankruptcy
Act, which reads as follows: (quoting same, *supra*)
* * * The order made by the New York Supreme
Court on February 18, 1915, became a lien on that
date. * * * The adjudication in bankruptcy was
made on March 24, 1915, which was less than four
months after the lien was created. Therefore the lien
became null and void automatically by virtue of the
provision of the Bankruptcy Act above quoted. The
making of the order which the petitioner is here object-
ing to was no interference with the process of the
Supreme Court of New York, as such process had been
already annulled by the Bankruptcy Act, and there was
nothing to interfere with when the order was made.
* * * * If there could be any doubt in such cases
the doubt has been extinguished by the decision of the
Supreme Court in *Chicago, Burlington & Quincy R. R.*
v. *Hall* (229 U. S., 511, 516, 30 Am. B. R. 619, 1913),
where the court, speaking of a levy in a garnishee pro-
ceeding in a State court, declared that all levies, seiz-
ures and liens, obtained by legal proceedings within
four months, that may or do interfere with that pos-
session are annulled.'' The true rule is made clear in
*Matter of Beck*, 38 Am. Bank. Rep. 797. In that case a
motion was made to vacate or modify an order staying
garnishment proceedings in the New York State court
under section 1391 (*supra*). The judgment was
obtained October 6, 1913. On October 21, 1913, execu-
tion was obtained under section 1391. On February 16,
1915, the petition in bankruptcy was filed. The city

paymaster had been retaining the proper portion of the debtor's wages in the meanwhile. Hough, C. J., presented the question as follows (pp. 798, 799) : " To whom does the money now in the hands of the city paymaster belong? Clearly no one but the trustee in bankruptcy can claim anything as against Bauer, the judgment creditor, and that trustee can claim nothing back of the four months' period which began October 16, 1914. \* \* \* The moment any wages or salary became due to Beck, the execution applied to the proper proportion thereof. Whatever was retained by the city paymaster down to October 16, 1914, is clearly applicable to the payment of Bauer's judgment. What was retained after October 16, 1914, was just so much money practically in the hands of the sheriff under a levy made within the four months' period, for there could be no levy upon Beck's salary until there was a salary to levy upon. Therefore, the date of levy is coincident with the date of accruing wage. To such a situation *Clarke* v. *Larremore* (188 U. S. 486) \* \* \* applies, and the trustee in bankruptcy is entitled to whatever the city paymaster has in his hand and retained from Beck's wages between October 16, 1914, and February 16, 1915. Beck has not yet obtained a discharge, nor does it appear whether he has applied for one; therefore, until he is discharged, or his right to apply for a discharge has expired, the doctrine of *In re Van Buren* (D. C., N. Y., 20 Am. B. R. 896, 164 Fed., 883) applies, and the city paymaster must continue to retain enough of Beck's still accruing salary, and retain it for the benefit of Bauer or of Beck as the case may be. *That is, if Beck gets a discharge, the debt is wiped out,* and if he does not get a discharge, Bauer's judgment may be satisfied out of wages earned after adjudication as well as before the four months' period. Of course, under no circumstances can the

trustee claim anything accruing after adjudication. The stay order will therefore be lifted to the extent of authorizing the judgment creditor and the sheriff to obtain and pay over whatever was retained by the city paymaster prior to October 16, 1914. The trustee is instructed to demand the amount retained between October 16, 1914, and February 16, 1915. This will leave a deficiency upon Bauer's judgment, and the retention of wages must still continue until it appears whether Beck gets his discharge or not." In view of the foregoing authorities the motion of the defendant Regine Stern to vacate the order of May 16, 1917, must be granted, and the comptroller is directed to pay to her such moneys as he has withheld since June 1, 1917. As to the small sum withheld from defendant's salary under the garnishee order from its date to June 1, 1917, *quære*. Only the garnisher, the sheriff and the comptroller have been made parties to this motion. The trustee in bankruptcy, on behalf of the creditors, is also entitled to said sum. Under the circumstances it should remain in the hands of the comptroller until the trustee takes such steps as he may be advised. Settle order herein on two days' notice to the sheriff, so that in case he should claim and be entitled to poundage, under section 3307, subdivision 23 of the Code of Civil Procedure, his rights may be protected.

Ordered accordingly.